# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 6, 2006

## STATE OF TENNESSEE v. GREGORY O. CHERRY

**Appeal from the Circuit Court for Hardin County**
**Nos. 8395 and 8396     C. Creed McGinley, Judge**

---

### No. W2005-02078-CCA-R3-CD  - Filed August 25, 2006

---

The Hardin County grand jury returned two indictments[1] against the Defendant, Gregory O. Cherry, charging him with thirteen drug offenses.  In separate plea agreements, the Defendant pled guilty to five offenses: (1) possession with intent to manufacture, deliver, or sell .5 grams or more of cocaine, (2) simple possession of marijuana, (3) possession of drug paraphernalia, (4) selling a Schedule IV controlled substance, and (5) delivering less than .5 grams of cocaine.  The plea agreements provided that the Defendant would receive an effective sentence of ten years with the manner of service to be determined by the trial court.  Following a sentencing hearing, the trial court ordered that the Defendant's ten-year sentence be served in the Department of Correction.  On appeal, the Defendant argues that the trial court erred in denying an alternative sentence.  Finding no error, we affirm the judgments of the Hardin County Circuit Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which J.C. MCLIN, J. joined.  GARY R. WADE, P.J., not participating.

Richard W. DeBerry, Assistant Public Defender, Camden, Tennessee, for the appellant, Gregory O. Cherry.

Paul G. Summers, Attorney General and Reporter; Sophia Lee, Assistant Attorney General; Robert Radford, District Attorney General; and John W. Overton, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]This Court consolidated the two cases for purposes of appeal.  See generally Tenn. R. App. P. 16.

**OPINION**

**Factual Background**

This case relates to the Defendant's guilty pleas and resulting sentences. In 2004, the November term of the Hardin County grand jury indicted the Defendant in two separate cases for thirteen drug offenses.

In case number 8396,[2] a ten count indictment was returned against the Defendant for: (1) sale of Phentermine, a Schedule IV controlled substance, on January 29, 2004; (2) delivery of Phentermine, a Schedule IV controlled substance, on January 29, 2004; (3) possession of Oxycodone, a Schedule II controlled substance, with intent to manufacture, deliver, or sell on January 29, 2004; (4) possession of Alprazolam, a Schedule IV controlled substance, with intent to manufacture, deliver, or sell on January 29, 2004; (5) possession of Diazepam, a Schedule IV controlled substance with intent to manufacture, deliver, or sell on January 29, 2004; (6) possession of Clonazepam, a Schedule IV controlled substance, with intent to manufacture, deliver, or sell on January 29, 2004; (7) possession of over one-half ounce of marijuana with intent to manufacture, deliver, or sell on January 29, 2004; (8) possession of drug paraphernalia on January 29, 2004; (9) sale of less than .5 grams of cocaine on July 15, 2004; and (10) delivery of less than .5 grams of cocaine on July 15, 2004. See Tenn. Code Ann. §§ 39-17-417(a), -425(a)(1).

As contained in the pre-sentence report, the facts underlying counts one through eight are as follows:

> On 1/29/04 while staking a residence out at 130 Long St., [the Defendant] came to this residence and sold 30 Fasten pills (Sch. IV) for the sum of $150.00. [Agent Tim Cunnigham] and Agent Kelly was [sic] inside this residence listening to this transaction and took [the Defendant] into custody while he was taking possession of the money. Inside a rental car parked in the driveway, in which [the Defendant] came up in was a red paper box which contained a metal container with 5 Oxecotin pills (Sch. II), pill bottle containing 8 Valium (Sch. IV, DeeDee Saucedo, name of label), pill bottle containing 10 Xanex pills (Sch. IV, James Dicus name on label), 27 Xanex in a pill bottle with no label (Sch. IV, different manufacture from the other bottle), a pill bottle containing 5 Klonopin pills (Sch. IV, unlabeled, seizure pill), pill bottle containing 25 Ativan pills (Sch. IV, no label), a large bag containing appx. 20 grams of marijuana, a set of digital scales, and a bottle containing 10 Antihistamine pills (Legend Drug, Bonnie James on label). [The Defendant] gave consent to search his residence at 260 Handy St. During the search of this residence a brown pill bottle (no label) was found in a chest drawer that had residue that field tested positive for cocaine (Sch. II), a[n] empty bottle of hydrocodone (labeled with Carol Woody name) and a[n] empty bottle of Alprazolam (labeled with Jerry Gamill name).

---

[2]The cases are discussed in chronological order, not in numerical sequence, because the events of case number 8396 occurred before those in 8395.

The record reflects that following the Defendant's January 29th arrest, he secured bail and was released. In regard to counts nine and ten of the indictment, offenses which occurred on July 15, 2004, the State provided the following relevant facts at the guilty plea hearing:

> The Defendant while on bond on the [January] count[s] met with an undercover officer, a different individual, on that date and engaged in a transaction for the sale of cocaine where he sold point three (.3) grams of cocaine at that time for sixty dollars ($60) to that agent. He was not arrested on that at that time.

In case number 8395, a three count indictment was returned against the Defendant, charging him with: (1) possession with intent to manufacture, deliver, or sell .5 grams or more of cocaine on September 6, 2004; (2) simple possession of marijuana on September 6, 2004; and (3) possession of drug paraphernalia on September 6, 2004. See Tenn. Code Ann. §§ 39-17-417(a)(4), -418(a), -425(a)(1). The facts surrounding these charges, as specified at the guilty plea hearing, follow:

> Later, on September the 6th, last year, the Defendant was stopped for a traffic violation by an officer with the Sheriff's Department. In the course of that stop and then after walking a dog around the car and the dog hitting on the automobile the Defendant was in, sixty grams of crack was found in the vehicle along with a small amount of marijuana and various items of drug paraphernalia.

On February 8, 2005, the Defendant pled guilty as charged to the three drug offenses in case number 8395. In case number 8396, the Defendant pled guilty to sale of Phentermine, a Schedule IV controlled substance, and delivery of less than .5 grams of cocaine.[3] Pursuant to the negotiated plea agreements, the Defendant was sentenced as a Range I, standard offender to eight years for the conviction of possession with intent to manufacture, deliver, or sell .5 grams or more of cocaine, a Class B felony; eleven months and twenty-nine days for the simple possession of marijuana and possession of drug paraphernalia convictions, Class A misdemeanors; two years for selling a Schedule IV controlled substance conviction, a Class D felony; and three years for delivering less than .5 grams of cocaine conviction, a Class C felony. The eight-year sentence for possession with intent to manufacture, deliver, or sell .5 grams or more of cocaine and the two-year sentence for selling a Schedule IV controlled substance were to be served consecutively to each other. The three-year sentence for delivery of cocaine and the class A misdemeanor sentences were likewise to be served consecutively to the two-year sentence but were to run concurrently with the eight-year sentence, resulting in an effective sentence of ten years as a Range I, standard offender. Under the terms of the plea agreement, only the manner of service was to be determined by the trial court.

---

[3]The record reflects that the Defendant pled guilty to Count 9 in case 8396. Count 9 of the indictment charges sale of less than .5 grams of cocaine on July 15, 2004; however, the judgment forms reflect that the Defendant pled guilty to delivery of less than .5 grams of cocaine on July 15, 2004. Because the indictment charged delivery in Count 10 and both offenses are Class C felonies, this error is at most a clerical one.

A sentencing hearing was held on August 3, 2005. The proof at the sentencing hearing established that the Defendant was thirty-four years old, the father of one child, and he had completed high school. The presentence report reflects that the Defendant had been employed as an "inspector" with "Aqua Glass Corp." from June 30, 2002, until October 28, 2004. During the Defendant's employment with Aqua Glass Corp., he worked part-time as a Radio Shack salesman for a period of five months. The Defendant stated that prior to this employment, he worked at a factory in Selmer from 1997 to 2001, and from 1994 until 1997, he was employed as a prison guard in Clifton.

With regard to criminal history, the Defendant's criminal record, prior to 2002, includes only convictions for driving while license suspended and other traffic offenses. Over the next three years, the Defendant was convicted of the following misdemeanors: violation of the bad check law, simple assault, disorderly conduct, violation of an order of protection, and two convictions for vandalism. The Defendant contested one of his vandalism convictions at the sentencing hearing, his counsel stating: "[The Defendant] believes that that vandalism offense date of 2/24/02, he believes that was dismissed."

Following this proof, the trial court denied all forms of alternative sentencing and ordered that the Defendant's effective ten-year sentence be served in confinement. In so ruling, the trial court stated:

> In checking on him, he's got some prior convictions. They're not significant. They're misdemeanors, but based upon the record as a whole, the fact that there are multiple drug offenses, the fact that there is a prior record, albeit misdemeanors, the Court finds that he's not an appropriate candidate for probation. Therefore, alternative sentencing is denied.

The Defendant appeals this ruling.

## ANALYSIS

The Defendant now asks this Court to overturn the trial court's decision and sentence him to an alternative sentence. Specifically,

> The [D]efendant contends he should have been sentenced pursuant to the Tennessee Community Corrections Act 40-36-101 et seq or placed on probation . . . .
>
> . . . .
>
> . . . The [D]efendant contends that he is amenable to rehabilitation through an alternative program such as Community Corrections that the Court could monitor.

The [D]efendant is an eligible offender under T.C.A. 40-36-106(a)[(1)(B)] because his crime is a non-violent drug related felony.

The [D]efendant's only prior record was for misdemeanors. The Court found that the prior record was not significant.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b) (2003);[4] State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

A defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated

_____

[4]We note that the legislature has recently amended several provisions of the Criminal Sentencing Reform Act of 1989, said changes becoming effective June 7, 2005. However, the Defendant's crimes in this case predate the effective date of these amendments. Therefore, this case is not affected by the 2005 amendments, and the statutes cited in this opinion are those that were in effect at the time the instant crimes were committed.

or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6); see also State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001). The following considerations provide guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing:

>   (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

>   (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

>   (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. See id. § 40-35-103(5).

The Defendant's effective ten-year sentence resulted from his convictions for Class B and D felonies. Because the Defendant was convicted of a Class B felony, he receives no presumption in favor of alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). Nonetheless, the Defendant remains eligible for probation because he received a sentence of eight years. Tenn. Code Ann. § 40-35-303(a). However, in view of his Class B felon status, it is the Defendant who bears the burden of establishing suitability for an alternative sentencing option.[5]

The trial court found that incarceration was appropriate in this case. The Defendant was indicted for thirteen drug offenses, many of which were committed while the Defendant was out on bail. State v. Zeolia, 928 S.W.2d 457, 462 (Tenn. Crim. App. 1996) (multiplicity of offenses under indictment is relevant to suitability for alternative sentencing options). Additionally, the Defendant's criminal history has become increasingly severe since 2002, including recent misdemeanor convictions for assault, disorderly conduct, violation of an order of protection, vandalism, and violation of the bad check law. The presentence report reflects that the Defendant was unemployed

---

[5]With regard to his two-year, Class D felony sentence, he is presumed to be a favorable candidate for alternative sentencing absent evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

for several months prior to his arrest in January of 2005.  This, coupled with the various types of drugs found in the possession of the Defendant, leads to the conclusion that the Defendant was selling drugs for pecuniary gain.  See State v. Ernest Willie Mays, M2001-02446-CCA-R3-CD, 2002 WL 1949695, at *7-8 (Tenn. Crim. App., Nashville, Aug. 23, 2002).  Based upon our review of the record, we cannot conclude that the trial court erred or abused its discretion by denying an alternative sentence.

## CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in its determination of the manner of service.  The sentencing decision of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE